UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
ANTHONY IANNUZZI and THERESA IANNUZZI,

               Plaintiff,

    -against-

WASHINGTON MUTUAL BANK, AMERICAN
MORTGAGE NETWORK, INC., d/b/a AMNET
MORTGAGE, MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., CUSTOM
CAPITAL CORP., PETER J. DAWSON,
BMG ADVISORY SERVICES, LTD., BRASH
MANAGEMENT GROUP, LTD,
21ST CENTURY FINANCIAL SERVICES and
INVEST FINANCIAL SERVICES,

               Defendants.
----------------------------------------------------------------------X

Civil Action No.
07 Civ. 964 (JFB) (WDW)

**MOTION TO SUBSTITUTE FDIC AS RECEIVER FOR WASHINGTON MUTUAL BANK AND STAY THE ACTION PENDING EXHAUSTION OF THE ADMINISTRATIVE CLAIMS PROCESS**

Pursuant to Rule 25(c) of the Federal Rules of Civil Procedure and the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(d)(12), the Federal Deposit Insurance Corporation, in its capacity as Receiver for Defendant Washington Mutual Bank moves (i) to substitute itself for Defendant Washington Mutual Bank as the real party in interest in this action, and (ii) for a stay of this action while Plaintiffs Anthony and Theresa Iannuzzi and Cross-Claimant Custom Capital Corp. pursue their claim through the administrative process mandated by 12 U.S.C. § 1821(d)(3) through (13).

I. <u>INTRODUCTION</u>

Washington Mutual Bank was a federal savings association located in Henderson, Nevada. On September 25, 2008, the Office of Thrift Supervision ("OTS") duly appointed the FDIC as Receiver for Washington Mutual Bank. *See* Ex. 1 OTS Order No. 2008-36, Sept. 25, 2008. On December 11, 2008, the FDIC-Receiver provided notice to the Plaintiffs and Cross-

Claimant of the statutorily-mandated administrative claims process. *See* Ex. 2. December 11, 2008 Notices to Creditor – Proof of Claim.  The FDIC-Receiver informed the Plaintiffs and Cross-Claimant that the bar date for submission of any claim is March 11, 2009. (90 days following their notice) *Id.*[1]  Under the governing statutory provisions (described in detail below), the FDIC-Receiver has 180 days to make a determination on any claim submitted by the Plaintiffs and Cross-Claimant.

Claimants against a failed financial institution must exhaust the statutory claims process as a prerequisite to judicial review.  *See, e.g.*, *FDIC v. Shain, Schaffer & Rafanello*, 944 F.2d 129, 136 (3d Cir. 1991); *see also Marquis v. FDIC*, 965 F.2d 1148, 1151 (1st Cir. 1992).  And while the filing of an administrative claim during the pendency of judicial proceedings does not eliminate the court's jurisdiction over a matter, *RTC v. W.W. Dev. & Mgmt., Inc.*, 73 F.3d 1298, 1307 (3d Cir. 1996), courts have recognized that the proper course is to "stay . . . proceedings as may be appropriate to permit exhaustion of the administrative review process as it pertains to the underlying claims." *Marquis*, 965 F.2d at 1154.  Accordingly, FDIC-Receiver respectfully requests that the Court stay proceedings until the earliest of the dates FDIC-Receiver makes a determination on any administrative claim filed by the Plaintiffs and Cross Claimant, or the expiration of the 180-day period following the filing of an administrative claim by the Plaintiffs and Cross Claimant.

II.  BACKGROUND

A.  The Mandatory Administrative Claims Process.

---

[1] The Notice to Creditor – Proof of Claim sent to Anthony and Theresa Iannuzzi inadvertently states that the Claims Bar Date is March 12, 2009.

In FIRREA, Congress enacted a comprehensive statutory scheme granting the FDIC authority to act as Receiver for a failed financial institution and special powers to carry out that function. The FDIC, as Receiver, must conserve and preserve the failed institution's assets, liquidate those assets when appropriate, and use the proceeds of liquidation to make distributions among the institution's valid creditors. *See* 12 U.S.C. §§ 1821(d)(2)(A)(ii); 1821(d)(2)(B) & (E). When making distributions to creditors, the Receiver must prioritize the payment of claims in accordance with federal statutory and regulatory requirements. *See* 12 U.S.C. §§1821(i)(1) & (2); 12 C.F.R. § 360.2. Congress has given the Receiver discretion to determine the timing and amount of such distributions. *See* 12 U.S.C. §§1821(d)(10)(A) & (B).

As an important part of the comprehensive scheme for winding up failed financial institutions, Congress created a statutory procedure for the orderly and efficient processing of claims. That administrative claims process, set forth in 12 U.S.C. §§ 1821(d)(3) through (13), centralizes the initial consideration and resolution of claims against a failed financial institution by requiring that all claims be submitted to the Receiver by a date certain established by the Receiver—the "claims bar date." The Receiver then has up to 180 days to review all claims, and grant or deny those claims (in whole or in part), without the delay and expense of litigation. *See* 12 U.S.C. § 1821(d)(5)(A)(i).

In Section 1821(d)(13)(D), Congress made the claims process a mandatory prerequisite to judicial review, withdrawing jurisdiction from all courts to hear claims against a failed institution for which FDIC has been appointed Receiver, except as otherwise granted elsewhere in Section 1821(d):

(D)   Limitation on judicial review

>   Except as otherwise provided in this subsection, *no court shall have jurisdiction* over—

>    (i)    any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>    (ii)   any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D) (emphasis added).  Jurisdiction is "otherwise provided" by subsection 1821(d) only for those claimants that have completed the administrative claims process.  *See* 12 U.S.C. §§ 1821(d)(6)(A)(ii), (d)(7)(A), (d)(8)(C).  "Congress's overriding purpose for requiring exhaustion of administrative procedures was to enable [the Receiver] 'to dispose of the bulk of claims against failed financial institutions expeditiously and fairly.'" *Praxis Props., Inc. v. Colonial Sav. Bank*, 947 F.2d 49, 64 (3d Cir. 1991) (quoting H.R. Rep. No. 101-54(I), 101st Cong., 1st Sess. (1989)).

B.  The Status Of This Action.

Plaintiffs initially filed their complaint on February 8, 2007 in the Supreme Court of the State of New York, County of Nassau. On March 6, 2007, this action was removed to the United States District Court for the Eastern District of New York.  In their complaint Plaintiffs Anthony Iannuzzi and Theresa Iannuzzi (hereinafter the "Iannuzzis") claim that they were defrauded when defendant Peter J. Dawson ("Dawson") through an alleged scheme whereby Dawson, allegedly acting as agent for defendant Custom Capital Corp., allegedly misinformed the Iannuzzis as to the true nature of a certain mortgage obtained by them.  The Iannuzzis allege that they intend to obtain a reverse mortgage, but instead entered into a conventional home refinancing mortgage transaction and that Dawson misappropriated the proceeds of such conventional mortgage.

The mortgage loan involved in this action was originally made by defendant American Mortgage Network Inc. ("AmNet") which was the original lender who loaned $300,000 to plaintiffs and acquired a mortgage on plaintiffs' home. Prior to the commencement of this action,

AmNet sold the loan and mortgage to co-defendant Washington Mutual Bank in the normal course of business. Subsequent to the commencement of this action, AmNet repurchased the loan and mortgage from Washington Mutual Bank. AmNet is currently the holder and servicer of the Mortgage Loan at issue.

Prior to this motion counsel for Washington Mutual Bank and the Federal Deposit Insurance Corporation, in its capacity as Receiver for Defendant Washington Mutual Bank, requested of counsel for plaintiffs and defendant Custom Capital Corp., that this action be dismissed as against Washington Mutual Bank. That request has not been agreed to an dit is respectfully submitted has been denied by such counsel.

Plaintiffs contend that Washington Mutual Bank, with regard to such mortgage transaction, allegedly failed to comply with the Truth in Lending Act ("TILA"), the Real Estate Settlement Practices Act ("RESPA"), and breached a fiduciary duty owed to plaintiffs. Plaintiffs seek to void the Note and Mortgage at issue in this action, to recover "statutory penalties and statutory attorneys fees" as against Washington Mutual Bank, and unspecified damages as a result of the claimed breach of a fiduciary duty by Washington Mutual Bank.

Defendant Custom Capital Corp. has asserted a cross-claim as against Washington Mutual Bank, asserting that any recovery by plaintiffs would be the result of the "recklessness, carelessness and negligence, wrongful conduct, breach of statutory duty, breach of fiduciary duty, breach of contract, fraud and conspiracy by", among others, Washington Mutual Bank.  –

Defendant Custom Capital Corp demands judgment against Washington Mutual Bank for contribution and/or indemnification.

On September 25, 2008, pursuant to a Purchase-and-Assumption Agreement among FDIC-Receiver, the FDIC in its Corporate capacity, and JPMorgan Chase Bank, the bulk of the

assets of Washington Mutual were transferred to JP Morgan Chase.  The transfer, however, did not include "any liability associated . . . with [Washington Mutual's] lending or loan purchase activities," expressly extending to "litigation pending against [Washington Mutual] related to liabilities retained by the receiver."  *See* Purchase-and-Assumption Agreement at 9, ¶ 2.5; 34, Schedule 2.1, ¶ 1 (relevant excerpt attached hereto as Exhibit C).  Such litigation, including this case, remained with FDIC-Receiver.[2]

The FDIC has not received nor made a determination on a claim from Plaintiffs and Cross Claimant.

III.  ARGUMENT

This Court should substitute the FDIC-Receiver for defendant Washington Mutual Bank and stay proceedings pending Plaintiffs and Cross Claimant's exhaustion of the administrative claims process mandated by FIRREA.

A.  The Court Should Substitute FDIC-Receiver for Washington Mutual Bank.

Under Federal Rule of Civil Procedure 25(c), when there has been a transfer of an interest from a party to the litigation to a nonparty:

> [T]he action may be continued by or against the original party, unless the Court upon motion directs the person to whom the interest is transferred to Be substituted in the action or joined with the original party.

Fed. R. Civ. P. 25(c).

---

[2] A purchase-and-assumption transaction is the favored alternative in handling a bank failure because the "transaction usually is arranged overnight, so that banking services are not interrupted for a single business day."  *NCNB Tex. Nat'l Bank v. Cowden*, 895 F.2d 1488, 1496 (5th Cir. 1990).  *Accord FDIC v. Bank of Boulder*, 911 F.2d 1466, 1469 (10th Cir.), *cert. denied*, 499 U.S. 904 (1991) ("Elimination of P&A's as an option for FDIC/Receiver would cause a great interference in the effective performance of the FDIC's mission to stabilize the banking industry.").

A transfer of interest has occurred here.  As Receiver for Washington Mutual Bank, by express operation of law, FDIC-Receiver assumes all rights, titles, powers, privileges, and operations of Washington Mutual Bank. 12 U.S.C. § 1821(d)(2).  By law, FDIC-Receiver operates as the successor to Washington Mutual Bank.  *Id*. § 1821(d)(2)(B).

Substitution of FDIC-Receiver under these facts is required by law.  *See, e.g. Buczkowski v. FDIC*, 415 F. 3d 594, 597 (7th Cir. 2005) ("Any litigant, or the court on its own motion, can substitute the FDIC for the failed bank as a party."); *Brown Leasing Co. v. Cosmopolitan Bancorp, Inc.*, 42 F.3d 1112, 1115 (7th Cir. 1994) ("After being appointed as receiver, the FDIC was substituted as defendant in [the bank's] place"); *In re Community Bank of N. Va. Second Mortg. Loan Litig.*, 418 F.3d 277, 293 n.6 (3d Cir. 2005) (granting the FDIC's motion to substitute as real party in interest after FDIC was appointed as receiver).   Accordingly, FDIC-Receiver should be substituted for Washington Mutual Bank as the real party in interest.

B.  <u>Exhaustion Of The Administrative Claims Process Is A Mandatory Prerequisite To Continuation Of This Appeal</u>.

In 12 U.S.C. §§ 1821(d)(3) through (d)(13), Congress established a mandatory administrative claims process to provide a mechanism for promptly and efficiently resolving all claims against failed financial institutions.  As the U.S. Court of Appeals for the Fifth Circuit has explained:

> To assure that the RTC or Federal Deposit Insurance Corporation could deal expeditiously with failed depository institutions, Congress created a new claims determination procedure by which the creditors of a failed institution may be required to first present their claims to the Receiver for administrative consideration before pursuing a judicial remedy.  12 U.S.C. § 1821(d)(3).

*Meliezer v. RTC*, 952 F.2d 879, 881(5th Cir. 1992) (footnotes omitted); *see also Althouse v. RTC*, 969 F.2d 1544, 1545 (3d Cir. 1992).

As part of the administrative claims process, the Receiver has the power to set a claims bar date, by which all claims must be submitted. *See* 12 U.S.C. § 1821(d)(3), 1821(d)(5)(C). The Receiver has 180 days after a claim is filed to determine whether to approve the claim. *See* 12 U.S.C. § 1821(d)(5)(A)(i). The Receiver may disallow any portion of a timely claim that is not proven to the Receiver's satisfaction. *Id.* § 1821(d)(5)(D). Section 1821(d)(6)(A) also establishes that a claimant can file a suit, or continue a pre-existing suit, on a claim within 60 days after the earlier of (i) the Receiver's initial determination of a claim, or (ii) the termination of the 180-day period in which the Receiver may determine the claim. *See* 12 U.S.C. § 1821(d)(6)(A).[3] In such a suit, the claim is subject to *de novo* judicial determination.

Apart from the review process set forth in section 1821(d), Congress barred all courts from hearing claims against the Receiver, unless and until the claimant completes the administrative claims process. *See* 12 U.S.C. § 1821(d)(13)(D). As the Third Circuit recognized in *FDIC v. Shain, Schaffer & Rafanello*, "Congress expressly withdrew jurisdiction to resolve claims to a failed bank's assets from all courts, except as provided in 12 U.S.C. § 1821(d)." 944 F.2d at 136. The Court further explained that "the administrative procedure exhaustion requirement of FIRREA is statutory, not judicial," and courts "are therefore not at liberty to ignore the statutory command." *Id. See also Rosa v. RTC*, 938 F.2d 383, 391-92 (3d Cir. 1991) ("That the bar is a statutory exhaustion requirement is indicated by the language 'except as

---

[3] The statute provides that:

> [T]he claimant may request administrative review of the claim . . . or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

12 U.S.C. § 1821(d)(6)(A)(ii).

8

otherwise provided in this subsection.'"); *Hudson United Bank v. Chase Manhattan Bank of Conn.*, 43 F.3d 843, 849 (3d Cir. 1994) ("[T]he purpose of § 1821(d)(5)(A) and (d)(13)(D) was to force plaintiffs with claims against failed depository institutions to file their claims under FIRREA's administrative claims procedures before filing them in federal court."); *Althouse*, 969 F.2d at 1546 (Under FIRREA, "it is plain that if a claimant receives notice but fails to file a timely claim with the [Receiver], the claim may not be pursued either before the [Receiver] or the courts.").[4]

Moreover, the U.S. Courts of Appeals for the First, Fourth, Eighth, Ninth and Tenth Circuits have expressly held that the administrative exhaustion requirement applies to *all* claimants, regardless of when the litigation against the financial institution was initiated. For example, in *Marquis v. FDIC*, the First Circuit explained that "FIRREA makes participation in the administrative claims review process mandatory for all parties asserting claims against failed institutions, *regardless of whether lawsuits to enforce those claims were initiated prior to the appointment of a receiver*." 965 F.2d at 1151 (emphasis added). Similarly, in *Brady Development Co. v. RTC*, 14 F.3d 998, 1002, 1003 (4th Cir. 1994), the Fourth Circuit explained

---

[4] *See also Damiano v. FDIC*, 104 F.3d 328, 333 (11th Cir. 1997) ("For post-receivership claims, the court has no subject matter jurisdiction unless the claimant has exhausted the administrative remedies."); *Simon v. FDIC*, 48 F.3d 53, 56 (1st Cir. 1995) ("Section 1821(d)(13)(D)(i) bars all claims against the assets of a failed financial institution which have not been presented under the administrative claims review process"); *Intercontinental Travel Mktg., Inc. v. FDIC*, 45 F.3d 1278, 1282-83 (9th Cir. 1994) ("No court has jurisdiction over the claim until the exhaustion of this administrative process. . . . Because ITM failed to properly exhaust the statutorily mandated exhaustion requirements of § 1821(d), no jurisdiction exists over its action."); *Bueford v. RTC*, 991 F.2d 481, 484 (8th Cir. 1993) ("Every court that has considered the issue has found exhaustion of FIRREA's administrative remedies to be a jurisdictional prerequisite to suit in district court."); *Meliezer v. RTC*, 952 F.2d 879, 882 (5th Cir. 1992) ("[S]ection 1821(d)(13)(D) clearly establishes a statutory exhaustion requirement."); *RTC v. Elman*, 949 F.2d 624, 627 (2d Cir. 1991) ("[T]he statute means just what it says . . . that a claimant must first present its case to the RTC under the administrative procedure erected by FIRREA before seeking relief in the federal courts.").

9

that pursuant to subsections 1821(d)(6)(A) and (d)(13)(D), "litigants who have an action pending in court against a [financial institution] that is subsequently placed in receivership . . . must avail themselves of FIRREA's administrative process in order to continue the action."  *See also Intercontinental Travel Mktg., Inc. v. FDIC*, 45 F.3d 1278, 1283 (9th Cir. 1994) (explaining that FIRREA "neither creates a separate scheme for cases pending at the time of the FDIC's appointment as receiver, nor allows claimants to pursue administrative and judicial remedies simultaneously."); *Bueford v. RTC*, 991 F.2d 481, 485 (8th Cir. 1993) (administrative exhaustion required under FIRREA "is to be applied to pending actions"); *RTC v. Mustang Partners*, 946 F.2d 103, 106 (10th Cir. 1991) ("The statute clearly requires that each creditor file a claim.  12 U.S.C. § 1821(d)(3)(B)(i). . . . No interpretation is possible which would excuse this requirement for creditors with suits pending, or allow the filing of suit to substitute for the claim process.").  The requirement that all claimants against a failed financial institution, including those who filed lawsuits prior to a bank's failure, exhaust the administrative claims process advances Congress's purpose to enable the Receiver to resolve the bulk of claims against failed financial institutions expeditiously, fairly, and without the expense of litigation.  *See Praxis Props.*, 947 F.2d at 64 (discussing "Congress's overriding purpose for requiring exhaustion of administrative procedures").

## C. A Stay Of This Action Is Required Pending Exhaustion Of The Administrative Claims Process.

It follows from the mandatory nature of the administrative claims process established by FIRREA that actions pending against a failed financial institution at the time a Receiver is appointed must be stayed to permit completion of the claims process.  As the First Circuit explained in *Marquis*, 12 U.S.C. §§ 1821(d)(3) through (13) "construct[] a scheme under which courts will retain jurisdiction over pending lawsuits—suspending, rather than dismissing the

suits—subject to a stay of proceedings as may be appropriate to permit exhaustion of the administrative review process as it pertains to the underlying claims." 965 F.2d at 1154.  The First Circuit concluded that this reading "is as faithful as possible to the statute's text, harmonizes its various provisions, and is consistent with the policies which Congress sought to advance." *Id.*  Moreover, "[b]y staying all proceedings in a pending action until the administrative claims process has run its course, efficacy will be promoted." *Id. See also Carney v. RTC*, 19 F.3d 950, 955-56 (5th Cir. 1994) ("[A]llowing a claimant simultaneously to pursue administrative and judicial remedies would thwart Congress' purpose in enacting FIRREA.  We conclude, as other courts have done, that FIRREA creates a 'scheme under which courts will retain jurisdiction over pending lawsuits . . . subject to a stay of proceedings as may be appropriate to permit exhaustion of the administrative review process as it pertains to the underlying claims.'" (quoting *Marquis*, 965 F.2d at 1154)); *Brady Dev.*, 14 F.3d at 1006 ("Judicial review of claims before an administrative review by the [FDIC] would render the administrative scheme established in 12 U.S.C. § 1821(d)(5)-(14) meaningless . . . Pending actions are to be stayed until the outcome of the administrative process.").  The Court thus should retain jurisdiction over this matter, but the proceedings must be stayed pending administrative exhaustion.

In this case, the administrative claims bar date was originally set for December 30, 2008 for the creditors of Washington Mutual Bank.  Plaintiffs were identified as potential claimants after the failure of Washington Mutual Bank, and were provided individual notice on December 11, 2008 with a bar date of March 11, 2009, 90 days from the date of that notice.  No claim has been received or determined, and under 12 U.S.C. § 1821(d)(5)(A)(i), FDIC-Receiver has 180 days from the date of any submission to act on the claim.  A claimant may judicially challenge

11

FDIC-Receiver's treatment of a claim, or continue a pre-receivership legal proceeding as to a claim, within 60 days of the earlier of (i) a decision by FDIC-Receiver on the claim, or (ii) the expiration of the 180-day statutory decision period for the claim.  *See* 12 U.S.C. § 1821(d)(6)(A). Accordingly, this case should be stayed until the earlier of the date FDIC-Receiver makes a determination on any administrative claim filed by the Plaintiffs and Cross Claimant, or the expiration of the 180-day period following the filing of the Plaintiffs and Cross Claimant administrative claim, in order to permit FDIC-Receiver to complete the administrative claims process.  *See, e.g.*, *Marquis*, 965 F.2d at 1155 (Courts should "hold pending litigation in abeyance until the administrative review process has run its course, or 180 days has passed, whichever first occurs").

IV.  CONCLUSION

For the foregoing reasons, FDIC-Receiver respectfully requests that the Court substitute the FDIC-Receiver for Defendant Washington Mutual Bank and stay the proceedings until the earlier of the date FDIC-Receiver makes a determination on Plaintiffs' and Cross Claimant's administrative claim or the expiration of the 180-day period following the filing of Plaintiffs' and Cross Claimant's administrative claim.

ROSNER NOCERA & RAGONE, LLP

By: ___\S\John P. Foudy_____
    John A. Nocera (JN-3399)
    John P. Foudy (JF-7322)
Attorneys for Defendant FDIC as Receiver
for Washington Mutual Bank
110 Wall Street, 23rd Floor
New York, New York 10005