UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————

№ 07-CV-964 (JFB) (WDW)

———————

ANTHONY IANNUZZI AND THERESA IANNUZZI,

Plaintiffs,

VERSUS

AMERICAN MORTGAGE NETWORK, INC., D/B/A AMNET MORTGAGE,
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
CUSTOM CAPITAL CORP., PETER J. DAWSON,
BMG ADVISORY SERVICES, LTD., AND
BRASH MANAGEMENT GROUP, LTD.,

Defendants.

———————

MEMORANDUM AND ORDER
July 22, 2010

———————

JOSEPH F. BIANCO, District Judge:

Plaintiffs Anthony Iannuzzi and Theresa Iannuzzi (hereinafter "plaintiffs" or the "Iannuzzis") bring this action against defendants American Mortgage Network, Inc. (hereinafter "AmNet"), Mortgage Electronic Registration Systems, Inc. (hereinafter "MERS"), Custom Capital Corp. (hereinafter "CCC"), Peter J. Dawson (hereinafter "Dawson"), BMG Advisory Services, Ltd. (hereinafter "BMG"), and Brash Management Group, Ltd. (hereinafter "Brash"). Plaintiffs allege violations of the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, as well as various state law claims,[1] in connection with a mortgage loan obtained by plaintiffs, the proceeds of which were allegedly misappropriated by defendant Dawson. Before the Court are motions for summary judgment by AmNet and CCC, seeking summary judgment on all of plaintiff's claims. In the alternative, AmNet and CCC cross-move for summary judgment on AmNet's claims for indemnification and contribution against CCC. For the reasons set forth below, the Court denies AmNet's motion

---

[1] The parties do not dispute that New York law applies to the various state law claims.

for summary judgment on plaintiffs' TILA claim. The Court grants both AmNet's and CCC's motions for summary judgment on plaintiffs' respective breach of fiduciary duty claims. The Court denies both of the cross-motions for summary judgment on AmNet's indemnification claim. CCC's motion for summary judgment on AmNet's claim for contribution is granted.

I. BACKGROUND

A. Factual Background

The Court has taken the facts described below from the parties' depositions, affidavits, and exhibits, and from defendants' Rule 56.1 statements of facts.[2] They are not findings of fact by the Court, but rather are assumed to be true for the purposes of deciding this motion. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Unless otherwise noted, where a party's 56.1 statement or deposition is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it.

Plaintiffs Anthony and Theresa Iannuzzi are husband and wife who reside at 209 Fulton Street in Westbury, New York. (Am. Compl. ¶ 1.)[3] Defendant Peter J. Dawson was employed by plaintiffs for about 15 years to prepare their tax returns. (AmNet 56.1 ¶ 1.) In about 2000, plaintiffs began turning monies over to Dawson for investment purposes. (AmNet 56.1 ¶ 2.) Plaintiffs allege that, in early 2006, Dawson discussed with them the possibility of obtaining a reverse mortgage on their home. (CCC 56.1 ¶ 9.)[4] Plaintiffs allege

---

[2] The Court notes that plaintiffs failed to file and serve a response to defendants' Local Rule 56.1 Statements of Facts, in violation of Local Civil Rule 56.1. Generally, a "plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 139 (S.D.N.Y. 2003)). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Gilani v. GNOC Corp.*, No. 04 Civ. 2935(ILG), 2006 U.S. Dist. LEXIS 23397, at *4-5 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Here, although plaintiffs did not submit a Rule 56.1 statement, they did provide some outline of their factual position in their opposition papers with some citation to the factual record. Thus, both the Court and defendants are able to discern the factual evidence upon which plaintiffs rely to create material issues of disputed fact to overcome summary judgment. Accordingly, in the exercise of its broad discretion, the Court will overlook this defect and will deem admitted only those facts in defendants' 56.1 statements that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Jessamy*, 292 F. Supp. 2d at 504.

[3] Because plaintiffs did not file a Rule 56.1 statement, the Court cites to the complaint for background information that is undisputed on the instant motion.

[4] Dawson testified that he actually recommended taking out a "self-directed reverse mortgage," which involved taking out a conventional mortgage and investing the loan proceeds. (CCC 56.1 ¶ 10.)

2

that they were interested in such a reverse mortgage. (CCC 56.1 ¶ 11.) Plaintiffs allege that Dawson represented to them that he would handle the application process for them. (CCC 56.1 ¶ 12.)

Plaintiffs allege that Dawson introduced Anthony Iannuzzi to Michael Laucella (hereinafter "Laucella"), who was a mortgage broker associated with CCC. (CCC 56.1 ¶ 13.) At some point, Anthony Iannuzzi met with Laucella and Dawson in Laucella's office in connection with plaintiffs' loan application. (Dawson Dep. at 153.)

In early May 2006,[5] CCC submitted a mortgage loan application to AmNet[6] on behalf of plaintiffs (hereinafter "loan application"). (AmNet 56.1 ¶ 6; AmNet Ex. 1.) AmNet is a mortgage lender duly authorized to transact business in the State of New York. (AmNet 56.1 ¶ 4.) On the loan application, a box was checked indicating that plaintiffs were applying for a "conventional" mortgage loan in the amount of $300,000. (AmNet 56.1 ¶ 7.) Plaintiffs assert that they did not fill out such an application or assist anyone else in filling out the application; plaintiffs also assert that their signatures on the application were forged. (A. Iannuzzi Aff. ¶ 9; T. Ianuzzi Aff. ¶ 9.)

AmNet asserts that it delivered a "Loan Disclosure Package" directly to Anthony Iannuzzi on May 5, 2006. (Dries Decl. ¶ 6.) The Loan Disclosure Package contained various documents, including a "Good Faith Estimate" and an "Initial Truth in Lending Disclosure." (Dries Decl. ¶ 6; AmNet Ex. 2.) A cover letter was included, which stated, in part:

> Dear Loan Applicant
>
> Your mortgage broker, [Custom Capital Corp.] has submitted your mortgage loan application to us for consideration[.] We look forward to providing excellent customer service. However, your principal contact in connection with this loan application will be your mortgage broker, CUSTOM CAPITAL CORP . . . .

(AmNet Ex. 2.) Plaintiffs assert that they did not receive any such disclosures prior to the closing. (T. Iannuzzi Aff. ¶ 12 ("No loan disclosure package was delivered to us at our residence or at any other location at any time. We never saw any loan disclosure documents prior to the Closing.").)

The Iannuzzi mortgage loan closed on May 16, 2006. (AmNet 56.1 ¶ 8.) Plaintiffs attended the closing with Peter Dawson. (AmNet 56.1 ¶ 9.) AmNet's closing attorney was Orlando Morales, Esq. (AmNet 56.1 ¶ 11.) Michael Laucella of CCC was also present. (Dawson Dep. at 167.)[7] It is

---

[5] The precise date of plaintiffs' loan application is unclear. The application is, in difference places, dated May 5, 2006 and May 8, 2006. The date of the application is relevant to determining the timeliness of AmNet's TILA disclosures. *See* 15 U.S.C. § 1638(b). The Court need not address this issue because, as discussed *infra*, there are other issues of disputed fact that prevent granting AmNet's motion for summary judgment on plaintiffs' TILA claims.

[6] The relationship between CCC and AmNet is discussed in greater detail *infra* in connection with AmNet's claims for indemnification and contribution.

[7] Plaintiffs state that Elizabeth Brillantino, a representative of the "title insurance company," was also present. (T. Iannuzzi Aff. ¶ 14.)

3

undisputed that plaintiffs signed several documents at the closing. (*See* T. Iannuzzi Aff. ¶¶ 12, 14.) Specifically, plaintiffs signed: (1) the final loan application (AmNet Ex. 3); (2) a $300,000 promissory note (AmNet Ex. 4); (3) a mortgage securing plaintiff's obgliation to repay the $300,000 loan (AmNet Ex. 5); (4) a three day "Notice of Right to Cancel" (AmNet Ex. 6); (5) a Truth in Lending Act disclosure statement (AmNet Ex. 7); (6) a RESPA servicing disclosure (AmNet Ex. 8); (7) a monthly payment disclosure (AmNet Ex. 9); (8) a HUD-1 settlement statement (AmNet Ex. 10); and (9) a New York commitment letter (AmNet Ex. 11). (AmNet 56.1 ¶ 10.) AmNet asserts that plaintiffs were given the requisite copies of these documents. (Morales Aff. ¶¶ 7-8.) Plaintiffs assert that they did not receive copies of any of the documents they signed at the closing. (T. Iannuzzi Aff. ¶¶ 13-14.)

On May 22, 2006, AmNet wire transferred the Iannuzzi mortgage proceeds into the escrow account of AmNet's closing attorney. (AmNet 56.1 ¶ 11.) On May 22, 2006, the net balance of the Iannuzzi loan proceeds, $284,225.73, was wire transferred directly into plaintiffs' own personal checking account at North Fork Bank. (AmNet 56.1 ¶ 12.) A sum equal to the net loan proceeds, $284,225.73, was subsequently disbursed from the Iannuzzis' account via three checks dated May 18, 2006, May 23, 2006, and July 21, 2006, all made payable to defendant BMG Advisory Services, Dawson's company. (AmNet 56.1 ¶ 13.) The three checks were signed by plaintiffs. (AmNet 56.1 ¶ 14.)[8] Dawson has since pled guilty to grand larceny in connection with a Ponzi scheme orchestrated by Dawson in which he deceived dozens of his clients. (CCC 56.1 ¶ 38.)

B. Procedural History

Plaintiffs commenced this action by filing a summons and complaint in New York Supreme Court, Nassau County on February 5, 2007. Defendants Washington Mutual Bank and MERS[9] removed this action to federal court on March 6, 2007. Plaintiffs filed an amended complaint on June 10, 2008, asserting claims for: (1) declaratory relief under TILA;[10] (2) breach of fiduciary duty against AmNet, MERS, and CCC; (3) injunctive relief related to the alleged breach of fiduciary duty and violations of TILA; (4) declaratory relief related to the alleged breach of fiduciary duty; (5) declaratory relief related to the rescission of the underlying transaction;

---

[8] Plaintiffs allege that Dawson used blank signed checks he had earlier obtained from plaintiffs. (Am. Compl. ¶ 48.)

[9] By Order dated November 5, 2009, Washington Mutual Bank was dismissed from this action upon motion by plaintiffs. (Dkt. 89.) Defendant MERS is AmNet's disclosed nominee for purposes of recording the mortgage at issue; MERS had no role in the origination or servicing of the mortgage loan at issue. (AmNet 56.1 ¶ 19.)

[10] Although the amended complaint also makes reference to the Real Estate Settlement Procedures Act ("RESPA"), plaintiffs do not appear to assert a separate RESPA claim in this action, *see Iannuzzi v. Washington Mut. Bank*, No. 07-cv-964 (JFB)(WDW), 2008 WL 3978189, at *7 n.3 (E.D.N.Y. Aug. 21, 2008), and plaintiffs do not respond to defendants' arguments regarding RESPA. (*See, e.g.*, Pls.' AmNet Opp. Br. at 3.) To the extent plaintiffs do allege a RESPA claim, any such claim has been abandoned. In any event, although the Second Circuit has not decided the issue, *see Johnson v. Washington Mut. Bank*, 216 F. App'x 64, 66 (2d Cir. 2007), numerous courts have held that there is no private right of action under RESPA. *See Iannuzzi*, 2008 WL 3978189, at *7 n.3 (collecting cases).

4

(6) breach of contract against Dawson, BMG, and Brash; (7) misappropriation and conversion against Dawson, BMG, and Brash; (8) fraud and misrepresentation against Dawson, BMG, and Brash; and (9) breach of fiduciary duty against Dawson, BMG, and Brash; and (10) a claim for accounting against Dawson, BMG, and Brash.

By Memorandum and Order dated August 21, 2008, the Court granted in part and denied in part defendant CCC's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[11] *Iannuzzi v. Washington Mut. Bank*, No. 07-cv-964 (JFB)(WDW), 2008 WL 3978189 (E.D.N.Y. Aug. 21, 2008). Specifically, the Court granted CCC's motion with respect to plaintiffs' TILA claims against CCC on the ground that CCC was not a creditor within the meaning of the statute. The Court denied CCC's motion with respect to plaintiffs' breach of fiduciary duty claim, as well as AmNet's cross-claims for indemnification and contribution.

On February 16, 2010, AmNet moved for summary judgment on all of plaintiffs' claims. AmNet also moved for summary judgment on its cross-claim for indemnification against CCC.[12] CCC moved for summary judgment on plaintiffs' only remaining claim against CCC — breach of fiduciary duty. CCC also cross-moved for summary judgment on AmNet's cross-claims for indemnification and contribution. Plaintiffs filed their opposition to defendants' motions on March 16, 17, and 18, 2010. AmNet and CCC filed replies in support of their motions on April 5, 2010.

Oral argument was held on July 19, 2010. This matter is fully submitted.

## II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely

---

[11] Familiarity with that decision is presumed.

[12] AmNet does not move for summary judgment on its claim for contribution against CCC.

5

colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

III. DISCUSSION

A. Plaintiffs' TILA Claim

For the reasons set forth below, the Court concludes that there are disputed issues of fact that preclude granting AmNet's motion for summary judgment on plaintiffs' TILA claim.

1. TILA Framework

"[TILA] was enacted to assure meaningful disclosure of credit terms, avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." *See McAnaney v. Astoria Fin. Corp.*, 357 F. Supp. 2d 578, 583 (E.D.N.Y. 2005) (citing, *inter alia*, 15 U.S.C. §§ 1601-65(b) (2004) and *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559 (1980)). "Failure to make a required disclosure and satisfy the Act may subject a lender to statutory and actual damages that are traceable to the lender's failure." *Id.* When it enacted TILA, "Congress delegated authority to the Federal Reserve Board of Governors to promulgate implementing regulations and interpretations known as Regulation Z." *Id.* (citing 15 U.S.C. § 1604(a)). "These regulations, which are located at 12 C.F.R. Part 226 may be relied upon by creditors for protection from any civil or criminal liability." *Id.* (citing *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232 (2004)).

In addition to recovering damages for a violation of TILA, a plaintiff can, in certain circumstances, rescind the loan transaction. TILA provides:

> Except as otherwise provided in this section, in the case of any consumer credit transaction . . . in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.

15 U.S.C. § 1635(a).

If a borrower does not receive certain

6

disclosures, the right to rescind the transaction extends for three years. 15 U.S.C. § 1635(f); *Barberan v. Nationpoint*, --- F. Supp. 2d. ---, No. 07-CV-11595 (KMK), 2010 WL 1529324, at *10 (S.D.N.Y. Mar. 2, 2010); *Macheda v. Household Fin. Realty Corp. of N.Y.*, 631 F. Supp. 2d 181, 190 (N.D.N.Y. 2008). The extended right to rescind is triggered if a creditor does not "clearly and conspicuously disclose" the borrower's right to rescind. *Barberan*, 2010 WL 1529324, at *10. In addition, under Regulation Z, a creditor is also required to make all "material disclosures," which are defined as "the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total of payments . . . ." 12 C.F.R. § 226.23(a)(3) & n.48. Two copies of the notice of right to rescind must be provided to each borrower. *See* 12 C.F.R. § 226.23(b); *see, e.g.*, *Glucksman v. First Franklin Fin. Corp.*, 601 F. Supp. 2d 511, 514 (E.D.N.Y. 2009) (holding that non-receipt of two copies of the notice of right to rescind gave rise to extended right of rescission) (denying motion to dismiss).

2. Application

Plaintiffs have presented evidence sufficient to withstand summary judgment with respect to their alleged non-receipt of the requisite TILA disclosure forms both before and at the closing. Defendants argue principally that plaintiffs have no right to rescind the transaction because, at the closing, they received and signed all of the disclosures required by TILA. (*See, e.g.*, AmNet 56.1 ¶ 10.) As proof of this fact, defendants point to the written acknowledgments signed by plaintiffs. Furthermore, AmNet's attorney at the closing, Orlando Morales, has stated in an affidavit that "[u]nsigned copies of each of the foregoing [disclosure] documents were supplied to the Iannuzzi[]s at the closing." (Morales Aff. ¶ 8.) However, TILA makes clear that a plaintiff's written acknowledgment of receipt of disclosure is not by itself conclusive. *See* 15 U.S.C. § 1635(c) ("Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section *does no more than create a rebuttable presumption* of delivery thereof." (emphasis added)). In order to rebut the presumption of delivery, plaintiffs must put forth evidence that they did not receive the disclosure. *See Williams v. First Gov't Mortg. & Investors Corp.*, 225 F.3d 738, 751 (D.C. Cir. 2000).

In this case, plaintiffs state in sworn affidavits that they did not receive any copies of the required TILA disclosure forms.[13] Theresa Iannuzzi states that, although plaintiffs signed various documents at the closing, they were not given copies of such documents. (T. Iannuzzi Aff. ¶ 14 ("We were not given any copies of any documents by Morales or Brillantino before we left the conference room and no one came into the office we were in after the Closing and handed anything to us.").) Thus, there is a factual dispute as to whether plaintiffs received copies of the requisite TILA disclosures, including notice of their right to rescind. Defendants argue that plaintiffs' proffered evidence is insufficient to withstand

---

[13] AmNet points out that plaintiffs do not claim that their signatures on the closing disclosure documents are forgeries. However, that does not resolve this case because plaintiffs do claim that they did not receive the requisite copies of those disclosure documents, particularly the copies of their notice of right to rescind.

7

summary judgment. The Court disagrees. Numerous courts applying the rebuttable presumption of 15 U.S.C. § 1635(c) have held that sworn statements by the borrowers asserting that they did not receive the requisite copies of their notice of right to rescind, despite signed acknowledgments to the contrary, are sufficient to preclude summary judgment. *See, e.g.*, *Macheda*, 631 F. Supp. 2d at 190-91 (holding that affidavits from plaintiffs stating that they had not each received two copies of the Notice of Right to Cancel was "sufficient to raise a question of fact barring summary judgment" (collecting cases)); *Knapp v. Americredit Fin. Servs., Inc.*, 245 F. Supp. 2d 841, 849 (S.D. W. Va. 2003) ("[T]his [written] acknowledgment only creates a rebuttable presumption of delivery, 15 U.S.C. 1635(c), a presumption that cannot stand in the face of testimony that the [plaintiffs] left the office without the TILA disclosure form . . . .") (denying summary judgment); *Copper v. First Gov't Mortg. & Investors Corp.*, 238 F. Supp. 2d 50, 64-65 (D.D.C. 2002) (holding that plaintiff's deposition testimony regarding lack of receipt of disclosure "rebutted the presumption of delivery and presented more than a scintilla of evidence in support of their position" (citations omitted)) (denying summary judgment on TILA claim); *Schumacher v. ContiMortgage Corp.*, No. C. 99-160 (MJM), 2000 WL 34030847, at *3 (N.D. Iowa June 21, 2000) ("Courts have consistently held that a debtor's testimony that he/she did not receive the TILA disclosure statement is sufficient to rebut the presumption that he/she did." (collecting cases)) (denying summary judgment); *accord Glucksman*, 601 F. Supp. 2d at 514 ("Although an executed delivery receipt is a hurdle to Plaintiffs' ultimate success on the merits, it is not an absolute bar to relief, but establishes only a presumption of delivery which may be rebutted upon a sufficient evidentiary showing." (citing 15 U.S.C. 1635(c)) (denying motion to dismiss TILA claim); *Haywood v. Fremont Inv. & Loan*, No. 08 Civ. 4961(BMC), 2009 WL 706090, at *1 (E.D.N.Y. Mar. 16, 2009) ("The plain language of the statute recognizes that there will be instances where delivery has not occurred notwithstanding execution of an acknowledgment that it did.") (denying motion to dismiss).[14] Thus, the Court cannot rule on the instant motion as a matter of law that plaintiffs are not entitled to a rescission of the May 16, 2006 transaction.

The Court also concludes that there are disputed issues of fact with respect to AmNet's alleged failure to provide pre-closing disclosures. TILA requires that various disclosures, including a good faith estimate ("GFE") of the loan amount and fees be provided before the closing. *See* 15 U.S.C. § 1638(b)(1), (b)(2)(A).[15] Although

---

[14] Although AmNet provides no cases to the contrary, the Court's own research reveals some case authority in support of AmNet's position. *See, e.g.*, *Oscar v. Bank One, N.A.*, No. Civ. 05-5928, 2006 WL 401853, at *3-4 (E.D. Pa. Feb. 17, 2006); *Golden v. Town & Country Credit*, No. Civ. 02-3627 (DWF/JGL), 2004 WL 229078, at *2 (D. Minn. Feb. 3, 2004). However, the Court agrees with the majority of courts cited above and concludes that, in light of the rebuttable presumption in 15 U.S.C. § 1635(c) and plaintiffs' sworn statements that they did not receive copies of the disclosures, summary judgment is unwarranted in this case.

[15] To the extent defendants argue that disclosure of the GFE is required only under RESPA and not under TILA, the Court rejects that argument. *See* 15 U.S.C. § 1638(b)(2)(A) ("[I]n the case of any extension of credit that is secured by the dwelling of a consumer, *which is also subject to the Real Estate Settlement Procedures Act* [12 U.S.C. 2601 et seq.], good faith estimates of the disclosures

8

defendants point to evidence that they did, in fact, provide the required pre-closing disclosures, plaintiffs state in their affidavits that they did not receive any of these documents. (*See* T. Iannuzzi Aff. ¶ 12 ("No loan disclosure package was delivered to us at our residence or at any other location at any time. We never saw any loan disclosure documents prior to the Closing.").) Even if such an alleged violation of TILA does not give rise to a right to rescind, plaintiffs would be entitled to damages on such a claim if they prevailed at trial.[16] *See, e.g.*, *Ng v. HSBC Mortg. Corp.*, No. 07-CV-5434 (RRM)(VVP), 2010 WL 889256, at *2 (E.D.N.Y. Mar. 10, 2010) (holding that plaintiff could proceed on TILA claim for money damages even if there was no right of rescission). Because there are disputed issues of fact regarding AmNet's compliance with TILA, AmNet's motion for summary judgment on plaintiffs' TILA claims is denied.[17]

B. Breach of Fiduciary Duty

Both AmNet and CCC move for summary judgment on plaintiffs' respective claims against them for breach of fiduciary duty. For the reasons set forth below, the Court concludes that both AmNet and CCC are entitled to summary judgment on plaintiffs' fiduciary duty claims.

1. Legal Standard

Under New York law, the elements of a breach of fiduciary duty claim are: (1) the existence of a fiduciary duty; and (2) the breach of that fiduciary duty. *See Russo v. Banc of Am. Sec., LLC*, No. 05 Civ. 2922, 2007 WL 1946541, at *8 (S.D.N.Y. June 28, 2007). The determination of whether a fiduciary duty exists cannot be determined "by recourse to rigid formulas." *Scott v. Dime Sav. Bank*, 886 F. Supp. 1073, 1078 (S.D.N.Y. 1995). "When examining whether a fiduciary relationship exists under New York law, a court examines 'whether one person has reposed trust or confidence in the integrity and fidelity of another who thereby gains a resulting superiority or influence over the first.'" *Teachers Ins. & Annuity Ass'n of Am. v. Wometco Enters.*, 833 F. Supp. 344, 349-50

---

required under subsection (a) of this section shall be made in accordance with regulations of the Board under section 1631(c) of this title and shall be delivered or placed in the mail not later than three business days after the creditor receives the consumer's written application, which shall be at least 7 days before consummation of the transaction.") (emphasis added); *see, e.g.*, *Pressman v. Meridian Mortg. Co.*, 334 F. Supp. 2d 1236, 1242 n.4 (D. Haw. 2004) ("Although there is no implied private civil remedy for violations of [RESPA], . . . TILA does provide for a private right of action when a mortgage lender fails to timely provide required disclosures." (internal citation and quotation marks omitted)); *see also Altamirano v. Copiague Funding Corp.*, Civ. No. 06-cv-1751 (PCD), 2008 WL 3845362, at *7 (D. Conn. Aug. 18, 2008) ("The GFE and the estimated TILA disclosure were contradictory and confusing, hence they do not meet TILA standards.").

[16] Counsel for AmNet conceded at oral argument that plaintiffs could proceed on their TILA claim with respect to various pre-closing disclosures — AmNet's argument in the instant motion is focused on plaintiffs' claim for rescission.

[17] Because there are disputed issues of fact with respect to plaintiffs' alleged non-receipt of various TILA disclosure documents, and because the Court denies AmNet's motion for summary judgment on this ground, the Court need not address the parties' additional arguments regarding the accuracy and timeliness of AmNet's disclosures.

(S.D.N.Y. 1993); *see also Mandelblatt v. Deyon Stores*, 521 N.Y.S.2d 672, 676 (App. Div. 1987) ("'A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" (quoting Restatement (Second) of Torts § 874, cmt. a)).

2. Application

a. Plaintiffs' Breach of Fiduciary Duty Claim against AmNet

It is undisputed in this case that plaintiffs were borrowers who obtained a loan from AmNet, a lender. As a general matter, a lender is not a fiduciary of its borrower under New York law. *See Fallon v. Wall Street Clearing Co.*, 586 N.Y.S.2d 953, 957 (App. Div. 1992) ("A debtor-creditor relationship, standing alone, does not create a fiduciary duty of the latter to the former); *see also Mfrs. Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 318 (2d Cir. 1993) ("Under New York law, the usual relationship of bank and customer is that of debtor and creditor, and does not create a fiduciary relationship between the bank and its borrower or its guarantors." (internal citation and quotation marks omitted)); *Owusu v. N.Y. State Ins.*, 655 F. Supp. 2d 308, 326 (S.D.N.Y. 2009) ("The relationship between a depositor and a bank is that of debtor and creditor, and therefore no fiduciary relationship exists between them.").

Plaintiffs argue that a fiduciary relationship was created in this case because: (1) AmNet had various disclosure obligations under TILA, which was meant to protect borrowers; (2) AmNet used a broker, CCC; and (3) AmNet used a closing attorney, Morales. (*See* Pls.' AmNet Opp. Br. at 19-22; *see, e.g., id.* at 22 ("[T]he borrower places its trust and confidence in the Lender to insure he has not been defrauded. The attorney is the eyes and ears of the Lender and his purpose is essential to eliminate fraud and to insure proper disclosure has been made to the borrower.").) The Court rejects this conclusory argument, which would effectively make virtually every lender a fiduciary of its borrower under TILA. Those facts, as a matter of law, are insufficient to establish a fiduciary relationship. In short, plaintiffs do not point to any evidence from which a rational jury could conclude that plaintiffs reposed trust or confidence in AmNet whereby AmNet gained superiority or influence over plaintiffs. *See Mfrs. Hanover Trust*, 7 F.3d at 318 (holding that there was no fiduciary relationship where lender did not control "the assets or operations" of the borrower or "otherwise exercised powers beyond those of a typical lender-creditor"); *see, e.g., Weil v. Long Island Sav. Bank, FSB*, 77 F. Supp. 2d 313, 323 (E.D.N.Y. 1999) ("The plaintiffs are a class of normal mortgage consumers, none of whom alleges any extraordinary facts regarding their transactions save the excessive fees. Thus the relationship between [defendant] and each plaintiff did not rise to the level of fiduciary relationship . . . .") (granting motion to dismiss).

Accordingly, plaintiffs' breach of fiduciary duty claim against AmNet fails as a matter of law, and AmNet's motion for summary judgment on this claim is granted.[18]

---

[18] To the extent plaintiffs assert that Dawson owed them a fiduciary duty and that such duty was imputed to AmNet, the Court rejects that argument. As a threshold matter, plaintiffs do not raise this argument in their opposition to AmNet's motion, and, in any event, there is no evidence that Dawson was AmNet's agent. (*See, e.g.*, AmNet

### b. Plaintiffs' Breach of Fiduciary Duty Claim Against CCC

It is undisputed that CCC was plaintiffs' mortgage broker in connection with the May 16, 2006 loan transaction. New York courts have held that a fiduciary duty generally does not exist between mortgage brokers and borrowers. *See, e.g.*, *Wint v. ABN Amro Mortg. Group, Inc.*, 800 N.Y.S.2d 411, 413 (App. Div. 2005); *Lum v. New Century Mortg. Corp.*, 800 N.Y.S.2d 408, 410 (App. Div. 2005); *Fisher v. Equicredit*, 800 N.Y.S.2d 407, 408 (App. Div. 2005); *see also Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998) ("Under New York law, as generally, there is no general fiduciary duty inherent in an ordinary broker/customer relationship."). However, a broker may take on a fiduciary duty by performing tasks and/or taking on obligations beyond that of an independent broker or traditional middleman. *See, e.g.*, *Baii Banking Corp. v. UPG, Inc.*, No. 86 Civ. 5544 (LLS), 1990 WL 160889, at *5 (S.D.N.Y. Oct. 17, 1990); *see also Ne. Gen. Corp. v. Wellington Adver., Inc.*, 624 N.E.2d 129, 132 (N.Y. 1993) ("[T]he dispositive issue of fiduciary-like duty or no such duty is determined not by the nomenclature 'finder' or 'broker' or even 'agent,' but instead by the services agreed to under the contract between the parties.").

As discussed in this Court's August 21, 2008 Memorandum and Order, plaintiffs alleged that CCC owed them a fiduciary duty in this case for two reasons: (1) Dawson was plaintiffs' fiduciary and CCC's agent, which caused Dawson's duty to plaintiffs to be imputed to CCC; and (2) CCC engaged in conduct that transformed the traditional broker-borrower relationship into one that involved a heightened duty. *See Iannuzzi*, 2008 WL 3978189, at *9. As set forth below, after both sides have had a full opportunity for discovery, plaintiffs have put forth no evidence to support this claim under either theory and, thus, summary judgment on the fiduciary duty claim is warranted.

### i. Dawson Was Not CCC's Agent

As a threshold matter, plaintiffs do not respond in their papers to defendants' argument that Dawson was not an agent of CCC and, therefore, that no duty of Dawson's could be imputed to CCC. Thus, any breach of fiduciary duty claim against CCC based on this theory is deemed to be abandoned and/or withdrawn.[19] Nevertheless, in an abundance

---

56.1 ¶¶ 4, 5, 15.)

[19] *See Bellegar de Dussuau v. Blockbuster, Inc.*, No. 03 Civ. 6614 (WHP), 2006 WL 465374, at *7 (S.D.N.Y. Feb. 28, 2006) (finding claim abandoned by virtue of plaintiff's failure to address it in opposition to defendant's summary judgment motion on the claim (citing *Douglas v. Victor Capital Group*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998))); *see also DeVito v. Barrant*, No. 03-CV-1927 (DLI) (RLM), 2005 WL 2033722, at *10 (E.D.N.Y. Aug. 23, 2005) (same); *Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); *Arias v. NASDAQ/AMEX Mkt. Group*, No. 00 Civ. 9827 (MBM), 2003 WL 354978, at *13 (S.D.N.Y. Feb. 18, 2003) (dismissing claims as "abandoned" where plaintiff's summary judgment opposition "neither refute[d] nor even mention[ed]" defendant's argument for summary judgment on two of his claims); *see also* Local Civ. Rule 7.1 ("[A]ll oppositions thereto shall be supported by a memorandum of law, setting forth the points and authorities relied upon . . . in opposition to the

of caution, the Court has considered the substance of CCC's argument on this point and concludes that plaintiffs have put forth no evidence that Dawson acted as CCC's agent.

Under New York law, "agency is defined as 'a fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" *In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp. 2d 447, 460 (E.D.N.Y. 2007) (quoting *L. Smirlock Realty Corp. v. Title Guar. Co.*, 421 N.Y.S.2d 232, 238 (App. Div. 1979)). The principal-agent relationship rests upon the following factual requirements: "'the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking.'" *Cabrera v. Jakabovitz*, 24 F.3d 372, 386 (2d Cir. 1994) (quoting Restatement (Second) of Agency § 1 cmt. b (1958)); *cf. Comm. Union Ins. Co. v. Alitalia Airlines, S.p.A.*, 347 F.3d 448, 462 (2d Cir. 2003) ("Control is not a crucial question where the issue is liability for a contract, however. If the agent had authority to enter into the contract, the principal will be bound." (citing Restatement (Second) of Agency § 147)). Agency may be express, implied or apparent. *See Flame Cut Steel Prod. Co., Inc. v. Performance Foams & Coatings, Inc.*, 46 F. Supp. 2d 222, 228 (E.D.N.Y. 1999). "Authority that is express or implied arises from a manifestation of consent from principal to agent. Such consent can be either express or implied from the parties' words and conduct as construed in light of the surrounding circumstances." *Id.* (citations and internal quotations omitted). Apparent authority, on the other hand, "arises from the written or spoken words or any other conduct of the principal which, reasonably interpreted, causes [a] third person to believe that the principal consents to have [an] act done on his behalf by the person purporting to act for him, [and] . . . is normally created through the words and conduct of the principal as they are interpreted by a third party, and cannot be established by the actions or representations of the agent." *Paul T. Freund Corp. v. Commonwealth Packing Co.*, 288 F. Supp. 2d 357, 373 (W.D.N.Y. 2003) (internal quotations and citations omitted); *see also Fennell v. TLB Kent Co.*, 865 F.2d 498, 502 (2d Cir. 1989).

Whether two parties are bound by a principal-agent relationship "is a mixed question of law and fact." *Commercial Union Ins. Co.*, 347 F.3d at 462. "[A]gency is a question of law for the court where the material facts from which it is to be inferred are not in dispute, the question of agency is not open to doubt, and only one reasonable conclusion can be drawn from the facts in the case." *Cabrera*, 24 F.3d at 386 n.14 (quoting 3 C.J.S. Agency § 547 (1973) (footnotes omitted)). However, "where the circumstances raise the possibility of a principal-agent relationship, and no written authority for the agency is established, questions as to the existence and scope of the agency must be submitted to a jury." *Time Warner City Cable v. Adelphi Univ.*, 813 N.Y.S.2d 114, 116 (App. Div. 2006) (citations omitted).

In the instant case, it is uncontroverted that CCC never agreed to have Dawson act as its agent, nor did it ever pay Dawson any consideration relating to mortgage brokerage

---

motion . . . . Willful failure to comply with this rule may be deemed sufficient cause for the . . . granting of a motion by default.").

services. (CCC 56.1 ¶ 39.) Plaintiffs point to no evidence of apparent authority, *i.e.*, conduct by CCC from which plaintiffs could reasonably infer an agency relationship. Indeed, plaintiffs state that they believed that Dawson was CCC's agent based on representations and conduct by Dawson himself. (CCC 56.1 ¶ 40.) Accordingly, to the extent plaintiffs claim that CCC owed them a fiduciary duty because of an alleged principal-agent relationship between CCC and Dawson, plaintiffs' claim fails to survive summary judgment.

### ii. CCC's Conduct Did Not Give Rise to Fiduciary Relationship

There is also no evidence from which a rational jury could conclude that CCC engaged in conduct that gave rise to a fiduciary relationship with plaintiffs. The only evidence plaintiffs point to regarding plaintiffs' dealings with CCC is that: (1) Anthony Iannuzzi met with Laucella once (Dawson Dep. at 153); (2) CCC submitted plaintiffs' loan application to AmNet; and (3) Laucella was present at the May 16, 2006 closing (Laucella Dep. at 167). CCC's president, Frank Lewkowtiz, asserts that: "CCC did not provide any duties to plaintiffs other than those that a mortgage broker typically provides to a client. Such duties included preparing the mortgage application on the clients' behalf and communicating with certain banks/lenders to assist the plaintiffs in securing a loan. CCC did not provide the plaintiffs with any sort of financial advice, nor was it in the business of offering financial advice to its clients." (Lewkowitz Aff. ¶ 4.) Plaintiffs do not controvert this evidence. Indeed, plaintiffs concede that various services provided by CCC, including "discussing mortgage products," do not themselves give rise to a fiduciary duty. (*See* Pls.' CCC Opp. Br. at 6 ("While these circumstances in and of themselves do not necessarily give rise to the 'proper circumstances' that establish a fiduciary relationship between a mortgage broker and borrower, it is CCC's subsequent conduct in contracting with the plaintiff that does so.").)

Instead, plaintiffs argue that a fiduciary duty was created in this case because plaintiffs *may* have entered a written agreement with CCC, under which CCC agreed, *inter alia*, to provide counseling in connection with plaintiffs' loan application. Plaintiffs point to the deposition testimony of Michael Laucella,[20] a CCC employee, regarding a document called an "Authorization to Verify Assets and Employment." (Laucella Dep. at 86-88.) Laucella testified that this document, which is not in the record in this case, is "a standard document that Custom Capital requires a customer to sign in order to process a loan application[.]" (Laucella Dep. at 86.) Laucella testified that, as part of this agreement,

> We counsel [borrowers] on basically how to — when they obtain a mortgage, what they will be responsible for. We disclose all of the process throughout the mortgage. What's going to happen and how it will take place. That's basically what we do.

(Laucella Dep. at 88.) Plaintiffs argue that "*assuming* Plaintiffs executed the 'standard' Authorization," a fiduciary relationship was created. (Pls.' CCC Opp. Br. at 7 (emphasis added).) The Court rejects this argument.

---

[20] Laucella's deposition was not taken in the instant action; plaintiffs refer to Laucella's testimony in a related case in state court.

13

Plaintiffs do not argue that they did, in fact, enter such an agreement with CCC, nor do they make such an allegation in the amended complaint. Plaintiffs' argument that they *may* have entered such an agreement because CCC entered the agreement in other cases is entirely speculative and insufficient to withstand summary judgment.[21] *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) ("[M]ere conclusory allegations or denials in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist." (internal quotation and citation omitted)).

In short, because plaintiffs have failed to point to any evidence that CCC engaged in conduct giving rise to a fiduciary relationship, CCC's motion for summary judgment on plaintiffs' breach of fiduciary duty claim is granted.[22] *See, e.g.*, *Bloom v. Rock*, No. 06 Civ. 6301 (NRB), 2010 WL 2267468, at *9-10 (S.D.N.Y. May 27, 2010) (granting summary judgment on breach of fiduciary duty claim where plaintiff, *inter alia*, failed to cite any evidence in support of theory); *Silberstein, Awad & Miklos, PC v. Carson*, 780 N.Y.S.2d 910, 910-11 (App. Div. 2004) ("In opposition, the plaintiff failed to submit evidence . . . that the defendant breached her fiduciary duty to the plaintiff by using confidential information acquired during her employment.") (granting summary judgment).

### C. AmNet's Cross-Claim for Indemnification

AmNet claims that, to the extent plaintiffs prevail against AmNet, AmNet is entitled to contractual indemnification and common law contribution from CCC. For the reasons set forth below, the cross-motions for summary judgment on AmNet's claim for indemnification are denied. CCC's motion for summary judgment on AmNet's contribution claim is granted.

#### 1. Factual Background

CCC and AmNet had a non-exclusive independent contractor relationship pursuant to a Mortgage Broker Agreement entered into on about August 1, 2005 (hereinafter "Broker Agreement"). (AmNet 56.1 ¶ 16.) The

---

[21] At oral argument, when asked by the Court to cite any evidence showing that CCC engaged in conduct giving rise to a fiduciary duty, plaintiffs' counsel stated that CCC obtained plaintiffs' information, apparently from Dawson, in connection with filling out plaintiffs' loan application. As a threshold matter, there is no indication that such conduct would give rise to a fiduciary duty. In any event, plaintiffs point to no evidence that CCC obtained their information from Dawson. In their papers, plaintiffs point to testimony from Laucella that, in other cases, he obtained borrower information from Dawson. (Laucella Dep. at 53, 110, 124-25.) However, plaintiffs point to no evidence that Laucella or CCC engaged in such conduct in this case. The Court also notes that to the extent plaintiffs attempt to rely on the allegations in their complaint to show creation of a fiduciary duty, such reliance is insufficient at the summary judgment stage. *See* Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleadings; rather, its response must — by affidavit or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial.").

[22] Because the Court concludes that CCC had no fiduciary duty as a matter of law, the Court does not address CCC's additional arguments that it did not breach any duty or that plaintiffs are unable to prove that CCC proximately caused their loss.

14

Broker Agreement included the following provision:

[] Lender Hold Harmless

In addition to any other remedies that the parties hereto may have at law or equity, Broker shall indemnify Lender and hold Lender harmless against any and all claims, losses, liabilities, costs, expenses, damages, penalties, fines and forfeitures of any kind, including but not limited to reasonable attorneys' fees, resulting from (a) the breach by Broker of any representation, warranty of covenant of this Agreement, or (b) the failure of Broker to comply with applicable legal requirements or Lender's requirements. In the event that Broker fails to pay Lender any sums due hereunder, or which are owed to the Lender pursuant to this section, Lender shall be permitted to offset such sums from any amounts which are due or become due to Broker pursuant to the terms of this Agreement.

(AmNet Ex. 13, Broker Agreement ¶ 9.) The Broker Agreement also provided that CCC would represent and warrant to AmNet that all information and documents submitted to AmNet were genuine and that the information contained in loan applications was true, accurate, and complete. (Broker Agreement ¶ 6(d).)

2. AmNet's Motion for Summary Judgment

"A party is entitled to full contractual indemnification provided that the 'intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances.'" *Drzewinski v. Atl. Scaffold & Ladder Co.*, 515 N.E.2d 902, 904 (N.Y. 1987) (quotation and citation omitted). In the instant case, disputed issues of fact preclude resolution of AmNet's indemnification claim at this stage of the proceedings. For instance, there is evidence that plaintiffs did not receive the requisite TILA disclosure documents at the closing, as discussed *supra*. AmNet does not assert that it was CCC's responsibility to provide these disclosures at the closing. Thus, viewing the evidence in the light most favorable to CCC, to the extent AmNet failed to provide such documents to plaintiffs, AmNet has not shown why CCC would be liable for AmNet's failure in that regard. *See, e.g.*, *Swissport Puerto Rico, Inc. v. Eagle Global Logistics, Inc.*, No. 05-CV-671 (JG), 2007 WL 496437, at *6-7 (E.D.N.Y. Feb. 12, 2007) (denying cross-motions for summary judgment on contractual indemnification claim under New York law because of disputed issues of fact); *Laneuville v. Gen. Motors Corp.*, 93 F. Supp. 2d 272, 276 (N.D.N.Y. 2003) ("[B]ecause factual issues remain concerning whether Plaintiff's injuries were cause[d] by [third-party defendant's] negligence . . . , third-party plaintiffs are not entitled to summary judgment with respect to [their] cause of action for contractual indemnity." (collecting cases)); *Martinez v. City of N.Y.*, 901 N.Y.S.2d 339, 345-46 (App. Div. 2010) (denying summary judgment on contractual indemnification claim because there was not yet any finding of liability); *George v. Marshalls of MA, Inc.*, 878 N.Y.S.2d 148-49 (App. Div. 2009) (holding that issues of fact precluded summary judgment on contractual indemnification claim).

Accordingly, AmNet's motion for summary judgment on its cross-claim for indemnification is denied.

### 3. CCC's Motion for Summary Judgment

There are also disputed issues of fact that prevent granting CCC's motion for summary judgment on AmNet's indemnification claim.[23] For instance, plaintiffs assert that they did not fill out the loan application submitted by CCC to AmNet and that they did not assist in its preparation. Plaintiffs also assert that their signatures on the application are forgeries. (A. Iannuzzi Aff. ¶ 9; T. Iannuzzi Aff. ¶ 9.) If a jury credited plaintiffs' evidence, then CCC clearly would have breached its agreement with AmNet to warrant that all of the information in plaintiffs' loan application was true, accurate, and complete. Viewing the evidence in the light most favorable to AmNet, because AmNet relied on CCC's representations in entering the loan transaction (Dries Decl. ¶ 19), to the extent AmNet were liable to plaintiffs for the alleged TILA violations, CCC could be contractually liable to AmNet under the broad indemnification clause in the Broker Agreement.[24] Accordingly, CCC's motion for summary judgment on AmNet's indemnification claim is denied.

### D. AmNet's Cross-Claim for Contribution

CCC's motion for summary judgment on AmNet's contribution claim is granted. Under New York law, "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought." N.Y. C.P.L.R. § 1401. Given the statutory language, it is well settled that "the existence of some sort of tort liability is a prerequisite to application of the [New York contribution] statute." *Bd. of Educ. of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley*, 517 N.E.2d 1360, 1364 (N.Y. 1987); *see also Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 859 F.2d 242, 249 (2d Cir. 1988) ("[S]ection 1401 creates a right of contribution only among joint tortfeasors." (citing *Sargent*, 517 N.E.2d at 1361)). In this case, plaintiffs' breach of fiduciary duty

---

[23] To the extent CCC argues that AmNet's indemnification claim must fail because CCC had no obligation to make any disclosures under TILA, the Court disagrees. Of course, as this Court held in its August 21, 2008 Memorandum and Order, CCC is not a creditor and, therefore, cannot be liable to plaintiffs under TILA. *See Iannuzzi*, 2008 WL 3978189, at *8. However, AmNet's claim for indemnification does not allege that CCC violated TILA but, rather, that CCC breached its agreement with AmNet.

[24] CCC argued in its papers and at oral argument that the allegedly forged initial loan application was irrelevant to AmNet's ultimate decision to extend credit to plaintiffs. (*See* CCC Reply Br. at 13-14 (citing Dries Decl. ¶¶ 3, 8-9).) However, given the evidence that AmNet relied on CCC's representations in entering the transaction (Dries Decl. ¶ 19), the Court concludes that this causation

issue is a question of fact for the jury. *See, e.g.*, *Creative Waste Mgmt., Inc. v. Capital, Envtl. Servs., Inc.*, 429 F. Supp. 2d 582, 610-11 (S.D.N.Y. 2006) (holding that question of proximate causation of damages in a breach of contract action was a question of fact for the jury); *Shop Vac Corp. v. BCL Magnetics Ltd.*, No. 04-CV-262, 2005 WL 2739161, at *7 (N.D.N.Y. Oct. 24, 2005) ("Where different reasonable and legally sufficient inferences of proximate cause are possible, the question is for the jury." (citation omitted)) (denying summary judgment on breach of contract claim).

claims fail as a matter of law,[25] and AmNet does not assert a tort claim against CCC. Instead, AmNet's claim against CCC sounds in contract, *i.e.*, an alleged breach of the Broker Agreement giving rise to contractual indemnification for AmNet's potential losses related to plaintiffs' federal TILA claim. Thus, in the absence of an allegation that CCC breached any duty to AmNet apart from the Broker Agreement, AmNet's contribution claim fails as a matter of law. *See Morse/Diesel*, 859 F.2d at 250 ("Any obligations which the third-party defendants failed to perform here were essentially contractual in nature. Such failure does not provide a basis to impose liability for contribution under New York law."); *see also Tower Building Restoration, Inc. v. 20 East 9th Street Apartment Corp.*, 744 N.Y.S.2d 319, 319-20 (App. Div. 2002) ("Although contribution under CPLR 1401 is not available where the damages sought by the plaintiff are exclusively for breach of contract . . . , the claims of third-party plaintiff . . . are not so limited. Third-party plaintiff has asserted a professional malpractice claim . . . . Although a tort claim may not ultimately be established, one is still pending and, thus, 'the necessary predicate tort liability for a contribution action remains in the case.'" (internal citations omitted)); *SSDW Co. v. Feldman-Misthopoulus Assocs.*, 542 N.Y.S.2d 565, 566-67 (App. Div. 1989) (holding that there could be no claim for contribution where third-party plaintiff's allegations "sound in contract, and no attendant tort claim is asserted alleging the breach of a duty independent of the contract"); *accord Warwick Admin. Group v. Avon Prods., Inc.*, 820 F. Supp. 116, 124 (S.D.N.Y. 1993) ("In this instance, no tort liability has been established as plaintiffs have only been held liable for response costs under CERCLA.") (denying leave to amend complaint to assert New York contribution claim). Accordingly, CCC's motion for summary judgment on AmNet's contribution claim is granted.

IV. CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment are granted in part and denied in part. Specifically, AmNet's motion for summary judgment on plaintiffs' breach of fiduciary duty claim is granted. CCC's motion for summary judgment on plaintiffs' breach of fiduciary duty claim and on AmNet's contribution claim is granted. Defendants' motions are denied in all other respects. The parties to this action shall participate in a telephone conference on Thursday, August 5, 2010 at 11:00 a.m. At that time, counsel for plaintiffs shall initiate the call and, with all parties on the line, contact Chambers at (631) 712-5670.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: July 22, 2010
Central Islip, New York

---

[25] The Court recognizes that the fact that plaintiffs' fiduciary duty claim against CCC fails as a matter of law does not by itself prevent a contribution claim against CCC by AmNet. *See Raquet v. Braun*, 681 N.E.2d 404, 407 (N.Y. 1997). However, as discussed above, because AmNet alleges no breach of a duty by CCC apart from the breach of the Broker Agreement, no contribution claim may lie.

\* \* \*

Attorneys for plaintiffs are Scott A. Rosenberg, Kevin R. Toole, and Kenneth J. Pagliughi, Scott A. Rosenberg, P.C., 2400 Jericho Turnpike, Suite 201, Garden City Park, NY 11040. Attorneys for defendants AmNet and MERS are Peter A. Ragone and John P. Foudy, of Rosner Nocera & Ragone, LLP, 110 Wall Street, 23rd Floor, New York, NY 10005. Attorneys for defendant CCC are Scott E. Kossove and Daniel M. Maunz, of L'Abbate, Balkan, Colavita & Contini, LLP, 1001 Franklin Ave., Garden City, NY 11530.